## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

**LONGHORN PUBLIC ADJUSTERS LLC.,**

Plaintiff,

v.                                    **No. 4:25-cv-0925-P**

**CARDCONNECT, LLC.,**

Defendant.

## OPINION & ORDER

Before the Court is Defendant CardConnect, LLC's ("CardConnect") Motion to Dismiss or, in the Alternative, Transfer Venue ("Motion"). ECF No. 7. Having reviewed the Motion, relevant docket filings, and applicable law, the Court finds that the lawsuit is hereby **TRANSFERRED** to the United States District Court for the Eastern District of New York without ruling on Defendant's Federal Rule of Civil Procedure 12(b)(6) motion.

## BACKGROUND

This case arises out of a dispute between Plaintiff, Longhorn Public Adjusters, LLC ("Longhorn") and CardConnect concerning CardConnect's handling of funds held through its payment-processing platform. Longhorn brings a class action alleging that CardConnect placed holds on funds maintained in its user accounts and withheld access to those funds without adequate notice or explanation. Plaintiff further alleges that CardConnect failed to provide meaningful notice of the reasons for the holds or a process for obtaining release of the funds, giving rise to the claims asserted in this action.

On or around May 2022, Longhorn entered into a Merchant Processing Application and Agreement ("MPAA"), an incorporated

Program Guide[1] with CardConnect and non-party Wells Fargo Bank, and CardConnect's Acknowledgment of the same (collectively, the "Agreement"). The Agreement mandates Suffolk County, New York, as the mandatory forum for any dispute:

> We have substantial facilities in the State of New York and many of the services provided under this Agreement are provided from these facilities. The exclusive venue for any actions or claims arising under or related to this Agreement shall be in the appropriate state or federal court located in Suffolk County, New York.

Based on this clause, CardConnect filed the Motion before the Court, which alternatively seeks to transfer the case to the Eastern District of New York. The Court now addresses the Motion.

## LEGAL STANDARD

A district court may transfer any civil case "[f]or the convenience of the parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. §1404(a). District courts have "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (citations omitted). When considering a motion to transfer venue, a district court must consider several private and public interest factors "none [of which] can be said to be of dispositive weight." *Id.* at 315. The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of the compulsory process power; (3) costs to witnesses of appearing; and (4) any other practical considerations affecting the ease and expense of trial. *Id.* The public interest factors include: (1) judicial economy; (2) interests associated with having local interests decided locally; (3) forum familiarity with the law at issue; and (4) problems arising from conflict of law. *Id.*

However, the Supreme Court in *Atlantic Marine* explained that the existence of a forum selection clause "dramatically alters" this analysis

---

[1] Some disagreement exists between the Parties as to whether the Program Guide is incorporated into the Agreement. We find that it is. Plaintiff agreed to the terms and conditions of the MPAA, which included the Program Guide, when it executed the MPAA.

in two ways. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 51 (2013). "First, the plaintiff's choice of forum merits no weight," because "the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Id.* at 63. Second, the "district court may consider arguments about public-interest factors only," because the private-interest factors "weigh entirely in favor of the preselected forum." *Id.* at 64. A valid forum selection clause is "given controlling weight in all but the most exceptional cases." *Id.* at 59–60.

## ANALYSIS

As the Fifth Circuit recognized in *Weber*, "the question of enforceability is analytically distinct from the issue of interpretation: Only after the court has interpreted the contract to determine whether it is mandatory or permissive does its enforceability come into play." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016). Accordingly, this analysis proceeds in three parts. First, the Court determines whether the clause is mandatory or permissive. Second, the Court addresses whether the clause is enforceable. Last, the Court will determine whether the public interest factors favor transfer of the case. The Court will address each in turn.

### 1. The Forum-Selection Clause is Mandatory

Neither Party disputes the forum-selection clause is mandatory. Nonetheless, the Court conducts its analysis. A federal court sitting in diversity should use the parties' choice of law to determine whether a forum-selection provision is mandatory or permissive. *See Weber*, 811 F.3d at 770?71. Here, the Agreement contains a New York choice-of-law clause, and neither party disputes that New York Law applies. *See* ECF No. 7 at 15. Accordingly, the Court looks to New York Law to determine whether the forum-selection clause is permissive or mandatory.

New York courts deem a forum-selection clause mandatory if it is "unambiguous" and "provide[s] that the specified forum is the exclusive or sole forum in which the matter may be heard. . . . " *Walker, Truesdell, & Roth Assoc., Inc. v. Globeop Fin. Servs., LLC*, No.600469/09, slip op. at *5 (N.Y. Sup. Ct. 2013). Ambiguity, according to New York law, is evident if language "on its face is reasonably susceptible to more than

3

one meaning." *Greenfield v. Philles Record*, 98 N.Y.2d 562, 569 (Ct. App. 2002).

Here, the forum-selection clause reads, "[t]he exclusive venue for any actions or claims arising under or related to this Agreement shall be in the appropriate state or federal court located in Suffolk County, New York." The Court finds this language is unambiguous on its face. Combined with the fact that neither Party disputes this, the Court finds that the forum-selection clause is mandatory.

### 2. The Forum-Selection Clause is Enforceable.

Having determined that the forum-selection clause in the GFSA is mandatory, the Court now turns to consider whether it is enforceable. As the Fifth Circuit has repeatedly emphasized, there is a "strong presumption" in favor of enforcing mandatory forum-selection clauses. *Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540, 543 (5th Cir. 2018); *see also Weber*, 811 F.3d at 773. "This presumption may be overcome by a clear showing that a forum-selection clause is unreasonable under one of the following circumstances: (1) the incorporation of the forum-selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene a strong public policy of the forum state." *Al Copeland*, 884 F.3d at 543 (cleaned up). Here, all four factors favor enforcement.

First, Plaintiff does not allege, nor is there any evidence, that the forum-selection clause was a product of fraud or overreaching. Thus, this factor weighs in favor of enforcement.

Second, Plaintiff has not shown that litigating in Suffolk County, New York, would be so gravely inconvenient or unfair as to effectively deprive it of its day in court. The Court is not persuaded by Plaintiff's broad and unsupported statement that "the forum (New York) is designed specifically to discourage legitimate claims." *See* ECF No. 14 at 16. To begin with, regardless of whether this case is transferred, New

York law would govern under the Agreement's choice-of-law provision. And if Plaintiff truly believed New York law or a New York forum to be so fundamentally unfair, it would not have agreed to litigate all disputes there in the first place. This factor therefore also weighs in favor of enforcement.

The third factor is similar to the second: Plaintiff does not demonstrate the application of the chosen law would be fundamentally unfair or would deprive it of a remedy. This factor favors enforcement.

Fourth, enforcement of the forum-selection clause does not contravene any strong public policy of the forum state. To the contrary, Texas courts recognize a strong public policy favoring enforcement of forum-selection clauses. *See SH Salon L.L.C. v. Midtown Mkt. Missouri City, TX, L.L.C.*, 632 S.W.3d 655, 659 (Tex. App.—Houston 2021, no pet.) (determining that forum-selection clauses are presumptively enforceable). This factor favors enforcement.

Because Plaintiff fails to overcome the strong presumption of enforceability under any of the four factors, the forum-selection clause must be enforced according to its plain terms.

### 3. The Public-Interest Factors Favor Dismissal

Because the forum-selection clause is both mandatory and enforceable, the *Atlantic Marine* framework dictates that the private-interest factors "strongly favor dismissal." *Weber*, 811 F.3d at 775. At this stage, the Court's analysis turns to the question of whether this is one of the "rare cases in which the public-interest factors favor keeping a case" despite the presence of a mandatory and enforceable forum-selection clause. *Id.* at 775–76. Ultimately, the Court must determine whether the public-interest factors "so greatly outweigh the private-interest factors as to justify retaining the case in the United States despite the Parties' agreement." *Id.* at 776.

Here, the relevant public interest factors include the following: (1) administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of

foreign law. *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 830-31 (N.D. Tex. 2013). The Court addresses each factor in turn.

First, the Court considers its own congestion. Neither party has presented evidence on this factor. However, the Northern District of Texas has one of the busiest dockets in the entire country. *See Chamber of Com. of the U.S. v. CFPB*, 735 F. Supp. 3d 731 (N.D. Tex. 2024) (Pittman, J.) (pointing out that the Northern District of Texas has a busier docket than the District Court for the District of Columbia). Indeed, as of June 30, 2025, the Northern District of Texas, had 522 pending cases per judgeship and 6,259 pending actions total. *See Perez v. Genoptix, Inc.*, No. 4:19-cv-00309-O, 2018 WL 11435300, at *3 (N.D. Tex. Nov. 6, 2018) (O'Connor, J.) (stating that to assess relative court congestion between districts, courts may analyze federal judicial caseload statistics when determining whether to transfer). And within the Northern District of Texas, the Fort Worth division is the busiest—two to three times busier than even the large docket managed by the Dallas Division. *See Outsourcing Facilities Ass'n v. United States Food & Drug Admin.*, No. 4:24-cv-00953-P, 2025 WL 1782574, at *1 (N.D. Tex. Mar. 26, 2025) (Pittman, J.) (cleaned up). As for the Eastern District of New York's congestion, this case is still in its early stages, and the New York Court will not have to redo work already done by this Court. Therefore, there is little concern over administrative difficulties flowing from court congestion. Accordingly, the Court finds this factor favors dismissal.

Second, the Court considers the local interest in deciding localized disputes. Here, there is a colorable argument that Texas citizens and Courts have a local interest in adjudicating disputes between Parties who do business in the state. Nonetheless, that interest cannot overcome the Parties' contractual choice of forum. Thus, this factor is neutral.

Third, as the Court has already noted, this case will be governed by New York law as a result of the Agreement's choice of law provision. Naturally, a New York Court will be intimately familiar with New York law. This factor favors dismissal.

The fourth factor is similar to the third: The Court does not foresee any conflict of law issues. Accordingly, the fourth public-interest factor favors dismissal.

Because only the third factor is neutral, and the rest support dismissal, the public-interest factors on balance favor enforcing the forum-selection clause. The Court therefore finds that transferring the lawsuit, without ruling on Defendant's 12(b)(6) motion, is appropriate. *See JTH Tax, LLC v. Cortorreal*, No. 4:23-CV-0173-P, 2023 WL 4673278, at *2 (N.D. Tex. July 20, 2023) (Pittman, J.).

### 4. Local Rule 62.2

Lastly, the Court determines that a stay of transfer would disrupt a just and expeditious resolution of this case. In September 2024, the Northern District of Texas updated its Local Rules to require a 21-day stay following any contested transfer order outside of the Fifth Circuit. N.D. Tex. L.R. 62.2. But under Local Rule 83.1, and "[n]otwithstanding the local civil rules, a presiding judge may direct the parties to proceed in any manner that the judge deems just and expeditious." N.D. Tex. L.R. 83.1. An additional 21 days—for a transfer order that does nothing more than enforce a straightforward forum selection clause—is not necessary or just.

The Court questions the legitimacy and practicality of Local Rule 62.2 (the "Rule"). In terms of legitimacy, the ostensible reason behind the Rule is to allow the de facto appellate review of a district court's decision to transfer a case to another circuit. But jurisdiction of federal courts to exercise appellate review is established by Congress and the United States Supreme Court—not the district courts through local rules. The current venue statutes, 28 U.S.C. §§ 1391, 1404(a), 1406, and 1631 say nothing related to a district court needing to stay a case following a transfer order to another district, for any amount of time. In fact, 1404(a) is so broad that it allows transfer to "*any other district or division* where it might have been brought." 28 U.S.C. 1404(a) (emphasis added). And courts have long enjoyed "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (citations omitted). While the venue statutes have

been enacted for decades, and Congress has had ample opportunity to amend them, the Rule seemingly circumvents that process with a substantive rather than procedural revision.

As for practicality, the Rule forces district court judges to prioritize certain filings over others. For example, if a motion for preliminary injunction and motion to transfer are filed at the same time, a judge may be forced to rule on the preliminary injunction given the 21-day waiting period the parties must endure—notwithstanding a clearly improper venue. And although the Court resorts to Local Rule 83.1 in this Order to avert the 21-day stay for the Parties' interests, it is clear that Local Rule 83.1 and the Rule are inconsistent. Moreover, the Rule necessarily infringes on a district court's charge to manage its own docket. *See Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962) (holding that trial courts possess inherent power to "manage their own affairs so as to achieve an orderly and expeditious disposition of cases").

## CONCLUSION

Having considered the mandatory and enforceable nature of the forum-selection clause and the relevant public-interest factors, the Court finds that the lawsuit is hereby **TRANSFERRED** to the United States District Court for the Eastern District of New York.

**SO ORDERED** on this **17th day of December 2025.**

*Mark T. Pittman*

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

8